

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

October 10, 1974

Major General Thomas S. Bishop
Adjutant General of Texas
P. O. Box 5218
Austin, Texas 78763

Opinion No. H- 418

Re: Whether the Texas
National Guard and
similar groups are
entitled to income
from a trust estab-
lished for the "White
Military Companies
of Dallas County."

Dear General Bishop:

You have asked several questions relating to the income from a trust and have described the factual background.

In December, 1888, a lot in the business section of Oak Cliff, City of Dallas, was conveyed by deed to the Dallas Artillery Company on condition that the Artillery Company would erect an armory on the property within six months. This was accomplished and title vested. The property was to be vested in the Dallas Artillery Company for its sole use, enjoyment and control as long as the Company remained an organization either military, civil or social, and after the dissolution of the Company the land was to go to any military company or social organization formed by as many as five of the members of the Company, either by themselves or associated with others. After the dissolution of the Company and any such organization or organizations, then the property was to revert to the County Judge of Dallas County and his successors in office to the use and benefit of such "White Military Companies of Dallas County" as might be in a position to use and enjoy it.

No military company has used or enjoyed the property since 1919 when the Dallas Artillery Company was mustered out after the First World War. Two law suits tried to recapture the trust estate, but failed. The County Judge of Dallas County sold the original property and later bought another tract of land. This was sold in 1971 for $120,000; $10,000 of which was paid then and the remainder was to be paid over a 20 year period with interest. A private association called

Dallas County National Guard Association was formed and, the Trustee, the County Judge of Dallas County, authorized the purchaser of the tract to make payments under the note directly to the Dallas County National Guard Association. The association spends the interest and gives the County Judge an accounting each year. Principal payments are treated as the corpus of the Trust and are not spent.

Your first question recites that it was held in Scott v. Sterrett, 234 S.W.2d 917, 920 (Tex. Civ. App. --Dallas 1950, writ ref'd. n. r. e.) that the trust beneficiaries, the white military companies of Dallas County, are "constituents of the organized militia of this state" and asks "whether or not is is legal to transfer interest payments received from this trust to the Dallas County National Guard Association which is not a state Militia entity but a private association?"

Before the property was sold in 1971, a declaratory judgment action was brought to determine, inter alia, whether the payments from the sale of the property could be made to the Dallas County National Guard Association. The parties to the action were the County Judge, the commanding officers of all National Guard units in Dallas County and the Attorney General. See Article 4412a, V.T.C.S. An agreed judgment was entered by the Court on December 3, 1970, and provided in part:

> IT IS FURTHER ORDERED, ADJUDGED and DECREED that the Promissory Note in the amount of $110,000 to be executed by the purchaser of such property be made payable to W. L. (Lew) Sterrett, County Judge of Dallas County, Texas, as Trustee for the White Military Companies of Dallas County, Texas, and/or his successors in office and trust, and that the County Judge allow payments to be made under said Note directly to the Dallas County National Guard Association, which Association shall provide annual accountings to said County Judge, showing that proceeds received under such Note were used by such Association in furtherance of the purposes for which the Trust herein referred to was created. Sterrett, et al. v. Didear, No. 70-12528, Dist Ct. of Dallas County, 116th Judicial Dist. of Texas, December 3, 1970.

Major General Thomas S. Bishop, page 3    (H-418)

As the payments on the note are made to the Dallas County National Guard Association pursuant to the judgment of the court, it is our opinion that they are being made legally so long as the purposes and activities of the Association do not change so that they no longer reflect the purposes of the trust. Whether that is the case depends on a determination of the facts and is outside the scope of this office's opinion process.

Your second question is:

If the answer to the first question holds such payments to be legal does the Adjutant General's Department have authority to supervise this fund under joint regulation, TARNG Regulation 230-2, TANG Regulation 176-2 and TSG Regulation 230-2?

The regulations about which you inquire outline detailed procedures for the handling of National Guard funds. Although the Association is closely related to the National Guard, it technically is not a part of the Guard. Therefore, we have found no authority by which the Adjutant General can extend the requirements of TARNG Reg. 230-2, TANG Reg. 176-2 and TSG Reg. 230-2 to the Association. However, the judgment of the Court directs the Association to provide an annual accounting to the County Judge in his role of trustee.

Your third and fourth questions ask whether the Texas State Guard is entitled to participate in the trust and whether the Dallas County National Guard Association violates the terms of the trust since some non-county residents, some retired members of the Guard and some regular Army and Air Force personnel assigned to the Guard are entitled to membership. Again, we believe these questions were answered by the District Court judgment which directed that the payments be made to the Association. Absent review or modification of the judgment, we must answer these questions in the negative.

Your fifth through eighth questions involve the federal tax status of the Association and the steps necessary for the Association to realize maximum federal tax benefits. We believe these questions are outside our opinion giving authority as outlined in Article 4399, V.T.C.S., as they are primarily private in nature.

Your final question is

Since Militia units now have Negro members what
effect does the provision of the trust have which set
it up for the benefit of the White Military Companies
of Dallas County?  Is this an enforceable provision
of the trust and if so by what procedures?

Although the trust refers to "White Military Companies," we do not
believe it must be interpreted to exclude benefits for non-whites.  Coffee
v. William Marsh Rice University, 408 S. W. 2d 269 (Tex. Civ. App.  --Houston
1966, writ ref'd. , n. r. e. ).  If the trust were interpreted as being limited to
a racially segregated class, the restriction would be unenforceable.  Shelley
v. Kraemer, 334 U. S. 1, 92 L. Ed. 1161 (1948).  It is our conclusion, there-
fore, that the beneficiaries of the trust are not limited to members of any
racial group.

## S U M M A R Y

The entitlement to income from a trust estab-
lished for the Dallas Artillery Company and upon
that group's dissolution for the use and benefit
of the "White Military Companies of Dallas County"
is determined by a district court judgment directing
that payments be made to a private association of
National Guard personnel.  Under Texas case law,
the trust is not to be interpreted to exclude bene-
fits for non-white persons, and an interpretation
limiting benefits to a racially segregated class
is unenforceable.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:


LARRY F. YORK, First Assistant


DAVID M. KENDALL, Chairman
Opinion Committee